UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------
ELAINE WANG, Individually and on Behalf of :
All Others Similarly Situated,             :
                                           :  Civil Action No. _____
        Plaintiff,                         :
                                           :
v.                                         :  **CLASS ACTION COMPLAINT FOR**
                                           :  **VIOLATIONS OF SECTIONS 14(e),**
FOUNDATION MEDICINE, INC., ALEXIS          :  **14(d)(4) AND 20(a) OF THE**
BORISY, TROY COX, MICHAEL R.               :  **SECURITIES EXCHANGE ACT OF**
DOUGHERTY, SANDRA HORNING M.D.,            :  **1934**
EVAN JONES, DANIEL O'DAY, MICHAEL          :
J. PELLINI M.D., MICHAEL D. VARNEY         :  **JURY TRIAL DEMANDED**
Ph.D., and KRISHNA YESHWANT M.D.,          :
                                           :
        Defendants.                        :
----------------------------------------------------------

## CLASS ACTION COMPLAINT

Elaine Wang ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is a class action brought by Plaintiff on behalf of herself and the other ordinary stockholders of Foundation Medicine, Inc. ("Foundation Medicine" or the "Company"), except Defendants (defined below) and their affiliates, against Foundation Medicine, the members Foundation Medicine's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(e), 14(d)(4) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), §§ 78n(d)(4), 78n(e) and 78t(a) respectively, and SEC Rule 1da-9, 17 C.F.R. 240.14d-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of

Foundation Medicine by certain affiliates of Roche Holdings, Inc. ("Roche"), which already owns roughly 57% of the Company.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Schedule 14D-9 (the "14D-9") to be filed on July 2, 2018 with the SEC and disseminated to Company stockholders. The 14D-9 recommends that Company stockholders tender their shares for the Tender Offer price. The Tender Offer is currently set to expire on July 30, 2018, whereby Foundation Medicine will merge with and into 062018 Merger Subsidiary, Inc. ("Merger Sub"), a wholly owned subsidiary of Roche, with the Company continuing as a wholly owned subsidiary of Roche (the "Tender Offer"). The Tender Offer is structured as a two-step tender offer. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Foundation Medicine common share issued and outstanding will be converted into the right to receive $137.00 in cash (the "Merger Consideration").

3. Plaintiff alleges that the 14D-9 is materially false and/or misleading because, *inter alia*, it fails to disclose certain material internal financial information about the Company, relied on by the financial advisor of the Company's Special Committee, Goldman Sachs & Co. LLC ("Goldman Sachs") to render an opinion that the Tender Offer is fair to Foundation Medicine shareholders, and certain material information regarding the sales process leading up to the Tender Offer, which omissions render the 14D-9 incomplete and/or misleading.

4. Specifically, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections and generally accepted accounting principles ("GAAP") reconciliation of those projections and (ii) the valuation analyses performed by Goldman Sachs in support of its fairness opinion. These omissions render the 14D-9 materially misleading,

including the basis for the Board's recommendation that shareholders tender their shares and the non-GAAP financial disclosures that were relied on and utilized by the Board and Goldman Sachs to recommend that the shareholders tender their shares.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to complete the Tender Offer unless and until the material information discussed below is disclosed to Foundation Medicine's stockholders or, in the event the Tender Offer is completed, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e), 14(d)(4) and 20(a) of the Exchange Act and SEC Rule 14d-9 and SEC Regulation G, 17 C.F.R. 244.100 in connection with the proposed merger between Foundation Medicine and Roche.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Foundation Medicine in headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Foundation Medicine common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Alexis Borisy has served as a member of the Board since 2009 and served as Chairman of the Board from 2011 to February 2017. He is a co-founder of the Company and served as interim Chief Executive Officer ("CEO") from 2009 through May 2011.

11. Individual Defendant Troy Cox ("Cox") has served as the CEO and a member of the Board since February 2017, and has been President since February 2018. Cox was Senior Vice President, BioOncology Sales & Marketing of Genentech, Inc. ("Genentech"), a subsidiary of Roche, from February 2010 until February 2017.

12. Individual Defendant Michael R. Dougherty has served as a director of the Company since November 2016.

13. Individual Defendant Sandra Horning, M.D. ("Horning") has served as a director of the Company since April 2015. Horning is currently the global head, product development, and Chief Medical Officer for Roche and Genentech.

14. Individual Defendant Evan Jones has served as a director of the Company since 2013.

15. Individual Defendant Daniel O'Day ("O'Day") has served as a director of the Company since April 2015. O'Day has served as CEO of Roche since September 2012 and is a member of the Roche corporate executive committee. O'Day also serves on various board including Genetech.

16. Individual Defendant Michael Pellini, M.D. ("Pellini") has served as a director of the Company since May 2011 and as Chairman since February 2017. Pellini served as the CEO of the Company from May 2011 until February 2017, and as President from May 2011 until March 2015.

17. Individual Defendant Michael Varney ("Varney") has served as a director of the Company since April 2015. Varney has served as head of Research and Early Development at Genentech.

18. Individual Defendant Krishna Yeshwant, M.D. has served as a director of the Company since 2011.

19. Defendant Foundation Medicine is incorporated in Delaware and maintains its principal offices at 150 Second Street, Cambridge, MA 02141. The Company's common stock trades on the NASDAQ under the symbol "FMI".

20. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Foundation Medicine common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants or Roche.

22. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of April 27, 2018, there were 37,037,754 outstanding shares of Foundation Medicine common

stock. The holders of these shares are believed to be geographically dispersed through the United States;

    (b)    There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

        i.    Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

        ii.    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        iii.    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Tender Offer consummated as presently anticipated.

    (c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

    (d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

    (e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

    (f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

A. **The Tender Offer Undervalues Foundation Medicine**

23. Foundation Medicine, Inc. provides various molecular information products in the United States. The company's molecular information platform includes proprietary methods and algorithms to analyze specimens across various types of cancer, as well as for incorporating that information into clinical care; and offers genomic insights about each patient's individual cancer, enabling physicians to optimize treatments in clinical practice and biopharmaceutical companies to develop targeted therapies and immunotherapies. It provides clinical products, such as FoundationOne for solid tumors; FoundationOne Heme for blood-based cancers, or hematologic malignancies, including leukemia, lymphoma, and sarcomas; Foundation Assay for Circulating Tumor; FoundationFocus CDxBRCA, a diagnostic assay to aid in identifying women with ovarian cancer; and FoundationOne CDx, a diagnostic assay for solid tumors. The company also offers FoundationCORE, a knowledgebase to publish scientific and medical advances, and foster relationships throughout the oncology community.

24. On June 19, 2018, Roche and the Company jointly announced the Tender Offer:

> Basel, 19 June 2018 - Roche (SIX: RO, ROG; OTCQX: RHHBY) and Foundation Medicine, Inc. (NASDAQ: FMI) today announced they have entered into a definitive merger agreement for Roche to acquire the outstanding shares of FMI's common stock not already owned by Roche and its affiliates at a price of US$ 137.00 per share in cash. This corresponds to a total transaction value of US$ 2.4 billion on a fully diluted basis, and a total company value of US$ 5.3 billion on a fully diluted basis. This price represents a premium of 29% to FMI's closing price on 18 June 2018 and a premium of 47% and 68% to FMI's 30-day and 90-day volume weighted average share price on 18 June 2018, respectively. The merger agreement has been unanimously approved by the board of Roche and a Special Committee of the independent directors of FMI and by its full board of directors with the Roche designated directors abstaining from the deliberations and vote. All current members of the FMI board have indicated that they intend to tender their FMI shares in the tender offer.

Daniel O'Day, CEO Roche Pharmaceuticals, said, "This is important to our personalised healthcare strategy as we believe molecular insights and the broad availability of high quality comprehensive genomic profiling are key enablers for the development of, and access to, new cancer treatments. We will preserve FMI's autonomy while supporting them in accelerating their progress."

Foundation Medicine, based in Cambridge, Massachusetts, is a market leading molecular information company dedicated to a transformation in cancer care, where each patient's treatment is informed by a deep understanding of the molecular changes that contribute to their disease. Their services include a full suite of comprehensive genomic profiling (CGP) assays to identify the molecular alterations in a patient's cancer and match them with relevant targeted therapies, immunotherapies and clinical trials.

"Foundation Medicine and Roche share the philosophy that every cancer patient should have access to personalized care informed by validated molecular information. Joining forces with Roche as an independent operating company allows Foundation Medicine to continue its collaboration with Roche, as well as our biopharma partners, to drive ubiquitous access to CGP testing and innovative data services," said Troy Cox, Chief Executive Officer for Foundation Medicine.

Terms of the agreement Under the terms of the merger agreement, Roche will promptly commence a tender offer to acquire all of the outstanding shares of FMI's common stock not already owned by Roche at a price of US$ 137.00 per share in cash. The closing of the tender offer will be subject to a majority of FMI's outstanding shares not already held by Roche being tendered in the tender offer. In addition, the transaction is subject to other customary closing conditions.

Following completion of the tender offer, Roche will acquire all remaining shares at the same price of US$ 137.00 per share through a second step merger. The closing of the transaction is expected to take place in the second half of 2018.

Citi is acting as financial advisors to Roche and Davis Polk & Wardwell LLP is acting as legal counsel to Roche. Goldman Sachs & Co. LLC is acting as financial advisor to the FMI Special Committee and Goodwin Procter LLP is acting as legal counsel to the FMI Special Committee.

\* \* \*

25. The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, the Food & Drug Administration ("FDA") approved FoundationOne CDx in November 2017 as a companion diagnostic for 15 targeted therapies, among them the lung cancer drugs Tagrisso and Xalkori, and the ovarian cancer treatment Rubraca. In addition, the Centers for Medicare and Medicaid Services stated that it will reimburse for tests that use FDA-approved DNA sequencing technology to map cancer tumors. The Company sold 21,861 clinical tests in the quarter ending March 31, 2018, representing a 57% year-over-year growth.

26. In the same quarter, the Company posted revenue of $52.8 million, representing a ***101% year-over-year growth***.

27. Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

28. Despite the inadequate Merger Consideration, the Board has agreed to Tender Offer. It is therefore imperative that Foundation Medicine's stockholders are provided with the material information that has been omitted from the 14D-9, so that they can meaningfully assess whether or not the Tender Offer is in their best interests prior to tendering their shares.

**B.** **The Materially Incomplete and Misleading 14D-9**

29. On July 2, 2018, Foundation Medicine filed the 14D-9 with the SEC in connection with the Tender Offer. The 14D-9 was furnished to the Company's stockholders and solicits the stockholders to tender their shares. The Individual Defendants were obligated to carefully review the 14D-9 before it was filed with the SEC and disseminated to the Company's

stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the 14D-9 misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act.

30. With respect to the two sets of financial projections disclosed in the 14D-9, referred to as the April and June Projections that were prepared by the Company's management and approved for Goldman Sachs' use by the Board (pages 36-38 of the 14D-9), the 14D-9 fails to provide material information.

31. Specifically, the 14D-9 provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT and (2) EBITDA, but fails to provide: (i) the line items used to calculate these non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). 14D-9 at 38.

32. First, the 14D-9 defines EBIT as "operating profit or loss before interest and taxes." 14D-9 at 38. However, the 14D-9 fails to provide the values of any of these line items, and fails to reconcile EBIT to its most comparable GAAP equivalent. 14D-9 at 38.

33. Second, the 14D-9 defines EBITDA as "operating profit or loss before interest, taxes, depreciation and amortization." 14D-9 at 38. However, the 14D-9 fails to provide the values of any of these line items, and fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent. 14D-9 at 38.

34. When a company discloses non-GAAP financial measures in a 14D-9 statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory

mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

35. Thus, to cure the 14D-9 the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on pages 36-38, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the 14D-9 not misleading.

36. Indeed, the Defendants acknowledge the misleading nature of non-GAAP forecasts as stockholders are cautioned: "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled amounts used by other companies." 14D-9 at 37.

37. Stockholders require this material since the Special Committee and the Board's unanimous recommendation that stockholders tender their shares was based, in part, on the following:

> the financial presentation and oral opinion of Goldman Sachs to our Special Committee and the Board (other than the Roche Designees), which was confirmed by delivery of a written opinion dated June 18, 2018, to the effect that, as of such date and based upon and subject to the factors and assumptions set forth in its written opinion, the consideration to be paid to holders (other than Roche Holding Ltd and its affiliates) of Shares pursuant to the Merger Agreement was fair from a financial point of view (the full text of the opinion of Goldman Sachs, dated as of June 18, 2018, which sets forth, among other things, the assumptions made,

11

>procedures followed, matters considered and limitations and qualifications of the review undertaken by Goldman Sachs is attached as Annex B and is incorporated by reference in this Schedule 14D-9 in its entirety) (see also the section entitled "—Opinion of the Special Committee's Financial Advisor");

14D-9 at 26, 29.

38. With respect to the *Selected Companies Analysis*, the 14D-9 fails to disclose the metrics of each of the selected companies. The omission of these multiples renders the summary of the analysis and the corresponding implied equity value reference ranges materially misleading. A fair summary of a Companies analysis required the disclosure of the individual multiples for each company, and by merely providing the high and low values that Goldman Sachs had applied is insufficient, as shareholders are unable to assess whether Goldman Sachs applied appropriate multiples or even unreasonable ones in order to justify a lower implied share price range.

39. With respect to the *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose: (i) the inputs and assumptions underlying the calculation of the various discount rate ranges utilized, including the value of WACC components; (ii) the value of the net debt used to adjust the enterprise values; and (iii) the actual terminal values calculated. These inputs are material because the omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading.

40. In sum, the omission of the above-referenced information renders statements in the 14D-9 materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to tender their shares, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to do so, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that 14D-9 communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

43.     Defendants have issued the 14D-9 with the intention of soliciting stockholder support for the Tender Offer.  Each of the Defendants reviewed and authorized the dissemination of the 14D-9 and the use of their name in the 14D-9, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders tender their shares.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the 14D-9, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the 14D-9. The preparation of a 14D-9 statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the 14D-9 or failing to notice the material omissions in the 14D-9 upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

46. The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, who will be deprived of their ownership of their shares if such misrepresentations and omissions are not corrected prior to the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Foundation Medicine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Foundation Medicine, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Foundation Medicine,

including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Foundation Medicine, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Tender Offer. The 14D-9 at issue contains the unanimous recommendation of the Board to approve the Tender Offer. The Individual Defendants were thus directly involved in the making of the 14D-9.

51. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

54. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Tender Offer, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

C. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 10, 2018

Respectfully submitted,

**ANDREWS DEVALERIO LLP**

*/s/ Daryl Andrews*
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
265 Franklin St., Suite 1702
Boston, MA 02100
617-936-2796
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

*Liaison Counsel for Plaintiff*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, New York 10016
Tel: 212-545-4600
Fax: 212-686-0114
melwani@whafh.com

*Counsel for Plaintiff*